**WO**

MH

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Paul Everett Parkins,

Plaintiff,

v.

City of Phoenix, et al.,

Defendants.

No.   CV-25-00362-PHX-MTL (ASB)

**ORDER**

**I.    Procedural History**

On February 3, 2025, Plaintiff Paul Everett Parkins, who is represented by counsel, filed a civil rights Complaint asserting claims under 42 U.S.C. § 1983 and state law against the City of Phoenix and Phoenix Police Department Officers Mauricio Figueroa, Miguel Fierro-Rendon, Mark McKnight, Kyle Ray, and Brandon Von Holten.  On July 7, 2025, Defendants filed a Motion to Strike (Doc. 17) and a Motion to Dismiss (Doc. 18) Plaintiff's federal-law claims.[1]  On August 18, 2025, Plaintiff filed a Response to the Motion to Strike (Doc. 26) and a combined Response to Motion to Dismiss and Motion to Amend (Doc. 25).  On August 25, 2025, Defendants filed their Replies (Docs. 27, 28).  Defendants' Reply to Plaintiff's Response to the Motion to Dismiss also encompassed a Response to Plaintiff's Motion to Amend.

. . . .

---

[1] Defendants also filed a separate Motion to Dismiss Plaintiff's state-law claim pursuant to the parties' stipulation.  This Motion was granted on July 11, 2025. (Doc. 19.)

The Court will deny the Motion to Strike, grant the Motion to Amend, and deny the Motion to Dismiss.

**II.      Motion to Strike**

In their Motion to Strike, Defendants move to strike paragraphs 57-82 of Plaintiff's Complaint.[2] (Doc. 17.)  These paragraphs—which appear in substantially similar form in the proposed amended complaint (Doc. 25-1 ¶¶ 36-43)—(1) identify several Phoenix Police Department (PPD) shootings that took place between 2014 and 2020, (2) describe the City's creation of entities charged with investigating PPD uses of force and issuing recommendations aimed at "reduc[ing] unconstitutional officer-involved shootings and non-lethal force,"[3] and (3) reference a June 13, 2024 Department of Justice (DOJ) report concluding that PPD has engaged in a pattern or practice of unconstitutional conduct, including the use of unjustified deadly force and unreasonable less-lethal force. Defendants first contend that this material should be stricken because information concerning PPD shootings is irrelevant to claims involving a different type of force and there is no indication the shootings were found unconstitutional by a court or other tribunal. Defendants also argue that the June 13, 2024 DOJ report was retracted in May 2025, is "full of hearsay," and contains conclusions that have been disproven by multiple court decisions.  (Doc. 17 at 3.)

In response, Plaintiff argues the challenged material is necessary to state a policy or practice claim under *Monell*.  Plaintiff also cites several cases involving the admissibility of DOJ and Judge Advocate General reports, including *Page v. City of Phoenix*, CV-24-03505-PHX-MTL (MTM), 2025 WL 1294414, at *1-2 (May 5, 2025), wherein this Court denied a similar motion to strike the same June 13, 2024 DOJ report on the ground that

---

[2] Although Defendants also request that paragraph 83 be stricken, this paragraph contains Plaintiff's request for a jury trial.  Accordingly, the Court construes Defendants' request as encompassing paragraphs 57-82.

[3] According to Plaintiff, these entities include the "Community and Police Trust Initiative," the "Phoenix Review and Implementation Ad Hoc Committee," and the "Office of Accountability and Transparency."  (Doc. 1 at 9-10; Doc. 25-1 at 12-13.)

defendants—including Defendant City of Phoenix—had failed to show how they would be prejudiced if the report were allowed to remain in plaintiff's pleading.

Rule 12(f) authorizes the Court to strike from a pleading all allegations that are "immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). Generally, Defendants have the burden of showing "that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration . . . and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." 5C Charles Alan Wright & Arthur Miller, Fed'l Prac. and Proc. § 1380 (3d ed. updated April 2022); *XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*, No. CV-08-01467-PHX-ROS, 2009 WL 2382998, *1 (D. Ariz. 2009). When ruling on a motion to strike, the Court accepts the challenged allegations as true and liberally construes the allegations in the light most favorable to the non-moving pleader. *Doe 1 v. Univ. of San Francisco*, 685 F. Supp. 3d 882, 895 (N.D. Cal. 2023).

To the extent Defendants contend the June 13, 2024 DOJ report must be stricken because it is "untrustworthy," the deficiencies they identify may affect the *weight* of the report's conclusions, but they do not render it ineluctably immaterial, as would be required to support the granting of a motion to strike. *See Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) ("[C]ourts generally grant a motion to strike only where 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" (quoting *Walters v. Fidelity Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1196 (E.D. Cal. 2010)). Likewise, the DOJ report's subsequent retraction may call into question the validity of its underlying conclusions, but it does not necessarily render the report irrelevant—especially not on this record, which fails to evince the basis for retraction. *See Asante-Chioke v. Dowdle*, No. CV 22-4587, 2025 WL 2977634, at *4 (E.D. La. Oct. 22, 2025) (concluding that factual findings in a DOJ report were relevant to plaintiff's excessive force claim even if the report had been withdrawn because "[t]he factfinder can decide what weight . . . to give to [it]").[4]

---

[4] Moreover, while Defendants claim that the DOJ "began taking all necessary steps

As for Defendants' argument that the report is "hearsay," such evidentiary concerns are typically a non-issue at the pleading stage, and any matters regarding admissibility can be addressed at a later date if Plaintiff attempts to rely on the report as evidence. *Doe 1*, 685 F. Supp. 3d at 895; *see also Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 491-92 (C.D. Cal. 2014) (denying motion to strike allegations in complaint based on "unripe" evidentiary objections).

Although Defendants cite several cases in which courts have questioned the relevance of DOJ reports, none are persuasive in this context. *Barr v. City of Albuquerque*, 2014 WL 11497833 (D.N.M. Aug. 22, 2014), involved a motion for summary judgment, not a motion to strike, and, in any event, the court in *Barr* found that the report in question supported the existence of a policy under *Monell*. *Barr*, 2014 WL 11497833 at **1, 5. The remaining three cases all involved DOJ reports that bore no relationship to the conduct that had allegedly caused plaintiff injury. In *Frank*, a plaintiff who had been arrested pursuant to a warrant was attempting to rely on a DOJ report concerning warrantless detentions. *Frank v. City of Ville Platte*, 2019 WL 1064261, *5 (W.D. La. March 6, 2019). And in *Walters*, the plaintiff attempted to support a claim that she had been unlawfully pepper-sprayed with a report that was confined to the use of police canines. *Walters v. Prince George's County*, 2013 WL 497920, *2 (D. Md. Feb 2, 2013). Likewise, *Gerow* featured an attempt to rely on the June 13, 2024 DOJ Report, which concerns PPD uses of force and discriminatory detention and arrest practices, to support a claim that PPD had failed to adequately investigate a fraud complaint. *Gerow v. U.S. Dep't of Just.*, No. CV-23-01059-PHX-DGC, 2024 WL 4528167, at *4 (D. Ariz. Oct. 17, 2024). Here, in contrast, the DOJ Report contains a substantive discussion of conduct that is highly similar to the conduct alleged by Plaintiff—to wit, the immediate use of non-lethal force without a reasonable

---

to close its investigation into the Phoenix Police Department and retracted any findings made by the prior administration" in May 2025 (Doc. 17 at 3), it is not clear what the status of this process is, and the June 13, 2024 report itself remains on the Department of Justice's website. *See* https://www.justice.gov/crt/media/1355866/dl?inline [https://perma.cc/344D-QR9C].

opportunity to comply and in conjunction with the investigation of minor crimes.[5]  It is therefore sufficiently related to Plaintiff's allegations to support a denial of Defendants' Motion to Strike.  *See Herrera v. City of Phoenix*, No. CV-25-01360-PHX-KML, 2025 WL 3264494, at *8 (D. Ariz. Nov. 24, 2025) (denying motion to strike where DOJ report's finding of a "pattern of use of force where no threat was presented" was sufficiently tied to plaintiff's factual allegations).

As for Defendants' argument that Plaintiff's allegations concerning police shootings are irrelevant to a claim involving non-lethal force, this argument only pertains to the first category of challenged material—prior PPD shootings.  Plaintiff's allegations regarding the City's investigative efforts are not confined to lethal uses of force and the DOJ Report likewise discussed both lethal and non-lethal uses of force.  (Doc. 1 ¶¶ 61-73; Doc. 25-1 ¶¶ 36-40.)  And even if the Court assumes that Plaintiff's allegations concerning PPD shootings are irrelevant to his claim involving the use of less-than-lethal force, Defendants have failed to show how they would suffer prejudice if such allegations were to remain in the Complaint or amended complaint.  As this Court stated in *Page*, "allegations in a pleading are simply allegations and are not evidence." *Page,* 2025 WL 1294414, at *2.  If Plaintiff attempts to introduce evidence pertaining to these shootings, Defendants may raise objections to the relevance of such information at that time.

For the foregoing reasons, Defendants' Motion to Strike will be denied.

## III.   Motion to Amend

Because the Court's ruling on Plaintiff's Motion to Amend could moot the Motion to Dismiss, in whole or in part, the Court turns next to that Motion.

Motions to amend should be granted unless the district court determines that there has been a showing of: (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The party opposing amendment bears the burden of showing

---

[5] *See* https://www.justice.gov/crt/media/1355866/dl?inline, *supra* n.4, at 27-28.

prejudice, futility, or one of the other permissible bases for denying a motion to amend. *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless the opposing party makes "an affirmative showing of either prejudice or bad faith").

### A.   Relevant Allegations

In his proposed amended complaint, Plaintiff alleges that Defendants falsely arrested him and used excessive force against him on the evening of February 1, 2024. (Doc. 25-1 ¶¶ 13, 22, 23.)  He claims that on that date, multiple PPD officers had assembled on a Valley Metro light rail platform to assist with fare enforcement efforts pursuant to an arrangement between PPD and Valley Metro Rail.  (*Id.* ¶¶ 11, 13, 23.)  According to Plaintiff, shortly after he exited the light rail car wearing noise-canceling headphones, some of the officers present, including Defendants Figueroa and McKnight,

> violently assaulted and injured him, throwing him to the cement platform, breaking his arm, striking his head multiple times with an officers [sic] knee, striking his ear causing blood to be discharged from it and a subsequent hearing loss, breaking his prescription eyeglasses, causing severe emotional distress and aggravating his preexisting PTSD disorder.

(*Id.* ¶¶ 15, 16.)  Following the assault, Defendants Figueroa and McKnight arrested and detained Plaintiff from 6:25 to 6:33 p.m.  (*Id.* ¶ 23.)

Plaintiff states that he was unarmed at the time and that there was no warrant for his arrest or basis to believe that he had committed any crime.  (*Id.* ¶¶ 15, 17.)  Thus, according to Plaintiff, Defendants Figueroa and McKnight "attacked him for no reason."  (*Id.* ¶ 28.)  Plaintiff further alleges that he "did nothing to threaten anyone . . . or cause anyone to believe that he had not paid the required light rail fare" and, "in fact[,] had a valid light rail pass" for that date.  (*Id.* ¶ 18.)  According to Plaintiff, he told Defendants he had a digital copy of his light rail ticket on his cell phone, but they did not believe him and would not give him enough time to access and display the ticket.  (*Id.* ¶ 29.)  Following his arrest, Plaintiff was issued a citation for violating Phoenix City Code § 36-404(1).  (*Id.* ¶ 23.)

This citation was dismissed on April 8, 2024. (*Id.* ¶ 26.) Plaintiff states that he reported this incident to PPD on May 26, 2024, but PPD has not investigated or responded to his report. (*Id.* ¶ 27.)

Plaintiff claims that PPD "has a well-documented history of the use of unjustified or excessive force by its police officers," including multiple high-profile police shootings that took place in 2014, 2017, and 2020. (*Id.* ¶ 36.) Plaintiff alleges that in 2015, "facing public backlash from [the 2014 shootings] and inappropriate use of non-lethal force," the City created a committee "to recommend policy changes that could reduce violence by PPD officers, including unjustified officer-involved shootings," conducted an officer involved shooting (OIS) review, and drafted a report recommending changes to when officers could use lethal force. (*Id.*) In 2016, the committee and the OIS allegedly issued recommendations "to reduce unconstitutional officer-involved shootings and nonlethal force." (*Id.*) Plaintiff claims that PPD "has failed to effectively implement these recommendations" and "has not curtailed PPD's violent use of force in any meaningful way," thereby "explicitly and implicitly condon[ing] such behavior." (*Id.*)

Plaintiff also alleges that in 2021, the City established an Office of Accountability and Transparency (OAT) that was charged with investigating and monitoring the PPD's use of force, in-custody deaths, and other community complaints. (*Id.* ¶ 38.) Plaintiff claims that OAT "eventually ceased functioning when a lack of support led to its supervisor's constructive discharge." (*Id.*)

Finally, Plaintiff asserts that the DOJ opened an investigation into the PPD on August 5, 2021. (*Id.* ¶ 39.) According to Plaintiff, the DOJ set out to "determine whether there was reasonable cause to believe that the PPD engaged in a pattern or practice of unlawful conduct that deprives people of their rights under the U.S. Constitution and federal laws." (*Id.*) At the conclusion of its investigation, Plaintiff claims, the DOJ issued a June 13, 2024 report finding that

> (A)    The PPD has continuously engaged in a pattern or practice of conduct
> that violates the U.S. Constitution and federal laws, including
> unjustified deadly force and unreasonable or excessive use of less-

lethal force;

(B)    PPD officers quickly resort to physical force to subdue persons, regardless of the crime or the threat; unnecessarily use force before even trying to speak to a person; and quickly resort to force when investigating minor crimes, or even no crime at all;

(C)    [PPD] officers use gratuitous force after a person is already handcuffed or restrained, and when there is no immediate threat;

(D)    The PPD is ineffective at adequately supervising or holding its officers accountable for misconduct including unnecessary and excessive force against persons; and

(E)    The PPD fails to conduct thorough and fair investigations of officer misconduct or adequately discipline officers who have engaged in misconduct.

(*Id.* ¶ 40.)  Plaintiff alleges that many of the recommendations in the DOJ Report have not been implemented "even though the City has known for years that changes in policy, training, and supervision are necessary to reduce the inappropriate and excessive use of force by PPD officers against persons."  (*Id.* ¶ 41.)

### B.    Futility

Defendants first contend that leave to amend should be denied because amendment is futile.  According to Defendants, Plaintiff's allegations in support of his excessive force claim are insufficient to overcome the individual Defendants' affirmative defense of qualified immunity and fail to demonstrate that his alleged injuries were caused by a policy, practice, or custom of the City of Phoenix.[6]

A "proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1998*), overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The test for futility is whether the amendment can survive a motion to dismiss under Rule 12(b)(6)." *Wray v. Greenburg*, 646 F. Supp. 3d 1084, 1116 (D. Ariz. 2022) (quoting *Fulton v. Advantage Sales & Mktg.,*

---

[6] Defendants do not argue that they are entitled to dismissal of Plaintiff's false arrest claim.

*LLC*, 2012 WL 5182805, *3 (D. Or. 2012)).

### 1.    Qualified Immunity

"At the motion to dismiss stage, 'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'" *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (quoting *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016)).    Determining whether officials are owed qualified immunity involves two inquiries: "(1) whether, [t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right'; and (2) if so, 'whether the right was clearly established'" in light of the "specific context of the case." *O'Brien*, 818 F.3d at 936, 1239 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (alteration in original).    To be clearly established, "the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (quoting *Acosta v. City of Costa Mesa*, 718 F.3d 800, 824 (9th Cir. 2013)). The second showing can be established in one of two ways. First, a right can be clearly established because there is law putting an officer on notice that his conduct was unlawful. *Est. of Aguirre v. County of Riverside*, 29 F.4th 624, 627 (9th Cir. 2022).    Second, a right can be clearly established without relevant caselaw if it is "obvious." *Id.*

Defendants argue that Plaintiff's proposed allegations are insufficient to overcome a defense of qualified immunity because he does not point to any case showing that his rights were clearly established.    In support of this argument, Defendants cite two cases from this District—*Mason v. Arizona*, 260 F. Supp. 2d 807 (D. Ariz. 2003), and *Patterson v. Necoechea*, 2015 WL 9997206 (D. Ariz. Dec. 10, 2015).    In both *Mason* and *Patterson*, however, defendants had already properly asserted a qualified immunity defense in a responsive pleading. *See Patterson*, 2015 WL 9997206, at *1; *Mason*, 260 F. Supp. 2d at 823-24.    Here, in contrast, Defendants have yet to describe how the defense of qualified immunity shields them from the operative allegations—i.e. those contained in the proposed amended complaint.    Rather, in their Response to Plaintiff's Motion to Amend, they

expressly rely on the qualified immunity argument from their Motion to Dismiss, which addressed fundamentally different allegations. *See* Doc. 28 at 4, 6; Doc. 18 at 8; *compare* Doc. 1 ¶¶ 15-25 (stating that Defendants McKnight, Figureoa, Von Holton, Fierro-Rendon, and Ray "wrestled Plaintiff to his knees," that Defendant Figueroa "placed his left knee on the left side of Plaintiff's head . . . for about 20 seconds," and that Defendant McKnight "forced Plaintiff to a standing position" by pulling Plaintiff's right arm upward with enough force to "cause[] Plaintiff to walk forward while bent over") *with* Doc. 25-1 ¶¶ 13-20 (cited above). Accordingly, neither *Mason* nor *Patterson* support a denial of leave to amend under the circumstances presented here.

Moreover, Plaintiff states that officers took him down shortly after he stepped onto the light rail platform without reasonable suspicion to believe he had committed a crime or any basis to believe that he had failed to pay the required fare. *See* Doc. 25-1 ¶¶ 16-17.[7] Implicit in these allegations is an assertion that Plaintiff was not fleeing or otherwise actively resisting arrest. The right to be free from non-trivial force for mere passive resistance is clearly established. *See Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (collecting cases establishing that a "failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"); *see also Rice v. Morehouse*, 989 F.3d 1112, 1117, 1121 (9th Cir. 2021) (no qualified immunity where plaintiff refused to follow orders and officers

---

[7] The allegations in the original Complaint suggest that Plaintiff may have failed to heed a command issued by one or more of the officers: Plaintiff states therein that he was "walking on the [p]latform" when he was "apprehended from behind by Defendant McKnight for allegedly failing to respond to Valley Metro Security Staff." *See* Doc. 1 ¶ 19. But "[w]alking away from officers at a normal pace, without more, is generally not considered evading arrest." *Gomez v. City of Vacaville*, 483 F. Supp. 3d 850, 863-64 (E.D. Cal. 2020) (citing *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010). Such conduct constitutes, at most, passive resistance. *See Silva v. Chung*, 740 F. App'x 883, 886 (9th Cir. 2018) (finding that a suspect who failed to comply with officers' instructions and walked away from officers "never actively attempted to evade arrest by flight"), *cert. denied*, 586 U.S. 1146 (2019). Moreover, it is difficult to portray Plaintiff's alleged conduct as resistant where, as here, he was wearing headphones that may have prevented him from registering any directives. *See Trevino v. City of Bakersfield*, No. 1:14-CV-001873-JLT, 2016 WL 1090307, at **1, 6 (E.D. Cal. Mar. 21, 2016) (concluding there was no evidence that deaf plaintiff was attempting to evade arrest when he walked away from arresting officer at a "leisurely pace" and evinced no awareness of police commands).

threw him to the ground and twisted his limbs); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093-94 (9th Cir. 2013) (no qualified immunity where plaintiff did not respond to officers' orders and officers tased him in "dart mode"); *Young v. County of Los Angeles*, 655 F.3d 1156, 1168 (9th Cir. 2011) (no qualified immunity where officer used pepper spray and baton to subdue a plaintiff who had disobeyed orders and backed away from officer). Accordingly, Defendants have failed to show that the excessive force claim alleged in Plaintiff's proposed amended complaint would be futile on the basis of qualified immunity.

### 2. *Monell* Claim

Defendants next argue that the proposed amended complaint is futile because Plaintiff's allegations are insufficient to state a *Monell* claim. According to Defendants, Plaintiff's allegations concerning "shootings and prior instances of uses of force involving weapons" are too dissimilar from the force alleged here to support the existence of a relevant policy, practice, or custom. (Doc. 28 at 6.) Defendants also argue that Plaintiff's policy allegations concern events that took place, at the latest, more than four years ago, and are therefore too attenuated to state a claim. Finally, Defendants urge the Court to disregard Plaintiff's allegations concerning the June 13, 2024 DOJ report for the reasons set forth in connection with their Motion to Strike.

First, the Court declines Defendants' invitation to disregard Plaintiff's allegations concerning the June 13, 2024 DOJ report. As stated above, the basis for the report's retraction is not apparent on this record, and while a factfinder may ultimately decide the report is entitled to no weight based on its subsequent retraction, the issuance of a press release evincing an intention to retract the report's findings is not sufficient to warrant the removal of such findings from Plaintiff's pleading. Moreover, as noted above, it is not clear what the status of the DOJ's retraction is.

Defendants' argument regarding dissimilarity and temporal attenuation only applies to Plaintiff's allegations concerning PPD shootings. Defendants do not contend that Plaintiff's allegations concerning municipal and federal investigative efforts are too

temporally removed to support *Monell* liability, and, as noted above, both the City's Community and Police Trust Initiative and the June 13, 2024 DOJ report are alleged to have encompassed uses of both lethal *and* non-lethal force.  Accordingly, even if the allegations regarding PPD shootings are insufficient to state a claim under *Monell*, there are additional allegations supporting a policy, practice, or custom claim. The Court finds these allegations sufficient to withstand a motion to dismiss under Rule 12(b)(6). Defendants' argument regarding futility is therefore rejected.

### C.   Undue Delay

Defendants also argue that leave to amend should be denied because it would cause undue delay.  While undue delay on its own is insufficient to deny a motion to amend a complaint, courts consider this factor in determining whether amendment should be granted. *Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir. 1999).  The seven-week time period that elapsed between the parties' Local Rule 12.1(c) conference and Plaintiff's filing of the proposed amended complaint is hardly cause for concern, especially where, as here, a scheduling order has yet to be entered.  Accordingly, any opposition on the basis of undue delay is without merit.

### D.   Remaining Factors

As this is Plaintiff's first attempt to amend his pleading and Defendants have not alleged any bad faith or dilatory motive, the remaining factors weigh in Plaintiffs' favor. Accordingly, the Court finds that Plaintiff is entitled to leave to amend and the Motion to Amend will be granted.

## IV.   Motion to Dismiss

Although Defendants' arguments in their Motion to Dismiss are based on Plaintiff's original Complaint, not the proposed Amended Complaint, in the interest of judicial efficiency, the Court will address these arguments to the extent they also apply to the Amended Complaint.

### A.   Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).   In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).   A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests."   *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted).   To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto.   *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).   If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.   *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).   A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.*

### B.     Discussion

In their Motion to Dismiss, Defendants raise three separate arguments.   First, they contend that Plaintiff's Complaint fails to state a claim against the City because his

allegations concerning prior misconduct are irrelevant and must be stricken. This argument is without merit for the reasons set forth in connection with the Motion to Strike and Motion to Amend. Defendants also argue that Plaintiff's allegations concerning the individual Defendants' use of force constitute impermissible "group pleading" and that the individual Defendants are entitled to qualified immunity. These arguments are moot insofar as they relate to Officers Fierro-Rendon, Ray, and Van Holten, who are not named in the proposed amended complaint. The balance of these arguments is addressed below.

### 1. Group Pleading

Defendants contend that Plaintiff has impermissibly employed the term "Defendant Officers" when describing the force allegedly used against him and has failed to clearly allege what each particular Defendant did to violate Plaintiff's rights. Citing *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011), Defendants argue that Plaintiff's "everyone did everything" allegations are improper under Ninth Circuit law and that his claims are therefore subject to dismissal pursuant to Rule 8 of the Federal Rules of Civil Procedure. (Doc. 18 at 5-6.) Plaintiff maintains that his proposed amended complaint cures any deficiency in this regard because it specifies that Defendants Figueroa and McKnight caused his injuries and omits officers Fierro-Rendon, Ray, and Van Holten.

In cases of excessive force where a plaintiff cannot definitively say which officer engaged in what force, a failure to provide the exact details of each use of force is not sufficient to defeat the claims. *See, e.g., Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) (holding defendants were not entitled to summary judgment where plaintiff had failed to identify "precisely which officer delivered which alleged blow or use of force" because plaintiff had nevertheless "developed and presented sufficient evidence from which a jury could infer that the individual officers who had physical contact with [Plaintiff] participated in the alleged beating"); *Amon Ra v. Cochise County*, 442 F. App'x 286, 288 (9th Cir. 2011) (holding that plaintiff had stated excessive force claim where he "alleged specific facts indicating that the named county defendants personally participated in the raid, or were in the home during and after the raid, or otherwise participated in the

planning of the raid and the decision to use a heavily-armed SWAT team against [the plaintiff] and his wife and children"); *see also M.M. by & Through Ficklin v. Antelope Valley Union High Sch. Dist.*, No. 2:24-CV-01338-MEMF-AGR, 2024 WL 4560172, at *8 (C.D. Cal. Oct. 10, 2024) (denying motion to dismiss excessive force claim where group of defendants was "not very large" and defendants were closely related and had allegedly engaged in "the same or similar conduct"); *Simmers v. King County*, No. 221CV00100BJRJRC, 2022 WL 3585146, at *11 (W.D. Wash. Aug. 22, 2022) (finding plaintiff had stated a claim because his allegations were "directed at a group of 'similarly situated defendants' such that the court c[ould] discern which individuals [we]re alleged to have taken part in which conduct alleged in the complaint").

In his proposed amended complaint, Plaintiff alleges that six or more police officers, including Defendants Figueroa and McKnight, were assembled on a light rail platform to engage in fare enforcement and that "some of the police officers present on the platform, including Defendants Figueroa and McKnight," injured him by "throwing him to the cement platform, breaking his arm, striking his head multiple times with an officer[']s knee, [and] striking his ear." (Doc. 25-1 ¶¶ 13, 16.)  Although these allegations do not rule out the involvement of additional individuals, the Court finds them sufficient to give Defendants Figueroa and McKnight notice of the nature of Plaintiff's excessive force claim against them.   Thus, they are not entitled to dismissal on this basis.

### 2.   Qualified Immunity

Defendants Figueroa and McKnight also argue they are entitled to qualified immunity on Plaintiff's excessive force claim.  They contend that no reasonable officer would have understood that "taking a suspect to the ground," "holding him there only long enough to get handcuffs on him," and then "walking [the suspect] away from the scene in a controlled position" would violate the suspect's constitutional rights.  (Doc. 18 at 9.)

The premise of this argument is faulty when viewed in the context of Plaintiff's proposed amended complaint.  Plaintiff does not allege in the proposed amended complaint that he was merely taken down by Defendants; rather he claims that the arresting officers,

including Defendants Figueroa and McKnight, threw him to the platform, fractured his arm, and kneed him in the head multiple times, causing him to bleed from his ear and suffer hearing loss.  Defendants cannot credibly argue that such force would have been justified in the absence of active resistance on the part of Plaintiff.  *See Rice*, 989 F.3d at 1121; *Gravelet-Blondin*, 728 F.3d at 1093-94; *Nelson*, 685 F.3d at 881.  And, as discussed above, Plaintiff's allegations indicate that he was engaged in, at most, passive resistance.  Thus, contrary to Defendants' contention, the right in question—i.e., the right to be free from non-trivial uses of physical force while only passively resisting— was clearly established.

For the foregoing reasons, Defendants' Motion to Dismiss will be denied.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to the Motion to Strike (Doc. 17), Motion to Dismiss (Doc. 18), and Motion for Leave to Amend (Doc. 25).

(2)     Defendants' Motion to Strike (Doc. 17) and Motion to Dismiss (Doc. 18) are **denied**.

(3)     Plaintiff's Motion for Leave to Amend (Doc. 25) is **granted**.  The Clerk of Court must **file** the proposed amended complaint (lodged at Doc. 25-1).

Dated this 26th day of February, 2026.

Michael T. Liburdi
United States District Judge

- 16 -